F. A. RAUCH, Appellant, v. DES MOINES ELECTRIC COMPANY, Appellee.

MARCH 6, 1928.

REHEARING DENIED JUNE 26, 1928.

F. L. Meredith and Samuel Berenbaum, for appellant.

Bradshaw, Schenk & Fowler, for appellee.

KINDIG, J.—The day of the accident here involved was June 14, 1921, and the place was the northeast corner of Fourth and Walnut Streets, in Des Moines. On this occasion, the plaintiff appellant, a resident of Chicago, was on the sidewalk, watching a Shrine parade passing along the street. Appellant, at the time, was near an electrolier owned by the Des Moines Electric Company, appellee, which concern is engaged in the manufacture, distribution, and sale of electricity for lighting and power purposes in said city and vicinity. This street light consisted of a pole in an upright position, carrying five electric light globes, one being immediately on the top of the "pole," while the other four are suspended from two cross-arms attached to the "pole." These cross-arms are about 11½ feet from the sidewalk. From the center of the "pole" to the middle of the "globes" (suspended from the cross-arms), the distance is 14 inches. About 2 feet east of this "electrolier pole" is another iron "pole," to which are attached fire and police alarm signal boxes. Between the top of the "fire-alarm box" and the "cross-arm" of the "electrolier," the space is 5 feet, 10 inches.

Those "globes" are fastened to the "electrolier" by contact with the rim through the use of a flange, and are held in place by means of three or four set screws, which are put through the border into the groove of the "flange." Because of the "parade," the public thoroughfare was lined with people, and one Joseph A. Dengle, anxious to obtain a suitable place from which to view the display, climbed the "fire-alarm and police-signal pole," to a place from which he was able to take hold of the "cross-arm of the electrolier," in order to transfer his position onto that "pole." During this time, appellant was standing immediately under said Dengle, and when the latter threw himself over onto the "electrolier pole," one of the "globes" therefrom fell and struck the appellant, who was in the act of stooping over to pick up his suitcase, resulting in a head injury.

In seeking to recover from appellee, appellant alleges three grounds of specific negligence: that there was, first, neglect in not having said "globe" fastened securely to the "electrolier;" second, carelessness in omitting to have the proper number of screws in the "rim" which holds the "globe" in position; and third, failure to properly inspect the "globe," to see that it

was firmly attached to its place in the "rim" which holds it. Appellee's answer was, in effect, a general denial. At the conclusion of the evidence, the court sustained appellee's motion for directed verdict, which was based principally upon two theories: that, first, appellant had proven no negligence committed by appellee proximately contributing to the injury; and second, the damage caused appellant was due to the intervening act of Dengle.

I. Referring directly to the allegations of appellant's petition, it is remembered that there are three charges of "negligence." Nowhere in the record is there any evidence even purporting to sustain the second and third items thereof: that is to say, that the number of "screws" were insufficient, or that the inspection was not proper, did not develop during the trial.

Recovery, of course, must be had upon the allegation and proof of "negligence." Without this, appellant must fail. Therefore, we direct no further attention to these particular propositions.

II. However, appellant argues that his case should have been submitted to the jury upon the first claim of failure to use due care,—to wit, that the "globe" was not securely fastened.

Foundation for this is predicated upon the following testimony of appellant:

"I examined the globe several hours after it struck me on the head, and noticed that a set screw which holds the globe in position did not project into the interior circle of the globe at all."

Manifestly, such observation and the witness's intended conclusion therefrom are not sufficient to show "negligence" in the case at bar. Many reasons for this are apparent. Time was remote, and whether or not the position of the "screw" observed was the same as it was before the catastrophe, or got into the location described afterwards, or during the jarring caused by Dengle, does not appear. Moreover, there is no showing of any kind that the lack of projection "into the interior circle" in any way caused the fall. Proof is lacking that the exercise of due care required extension of the "fastener" into the "interior circle."

III. Noteworthy at this juncture is the following testimony of Dengle:

312

"I know it was through my action that the globe fell, I think; because, if I hadn't gone up on the electrolier, the globe would be up there now. I think it was my fault that the globe fell."

But appellant urges that, nevertheless, he is entitled to a reversal, because of the well known doctrine that the mere fact some other cause operates with the "negligence" of the defendant to produce the injury complained of does not relieve it (appellee) from liability,— citing as authority therefor *Gould v. Schermer*, 101 Iowa 582; *Pratt v. Chicago, R. I. & P. R. Co.*, 107 Iowa 287; *Harvey v. City of Clarinda*, 111 Iowa 528; *Aga v. Harbach*, 140 Iowa 606; *Steburg v. Vincent Clay Prod. Co.*, 173 Iowa 248; *Burke v. Creamery Pkg. Mfg. Co.*, 126 Iowa 730. A prerequisite for the application of that legal principle is proof of appellee's "negligence," and without the establishment of this primary necessity there can be no recovery.

IV. Recognition of another theory is now important. There must be causal connection between the alleged "negligence" and the injury sustained. Burden of bearing this "proof" was on appellant. Assuming that such substantiation was equally balanced, or as conformable to appellee's theory as that of appellant, then the duty in this regard has not been met: *O'Connor v. Chicago, R. I. & P. R. Co.*, 129 Iowa 636; *Ashcraft v. Davenport Locomotive Works*, 148 Iowa 420; *Dingmon v. Chicago & N. W. R. Co.*, 194 Iowa 721.

Truly, this "proof" of "causal connection" may be by either direct or circumstantial evidence, or both; yet, whatever method employed, the result must be the same,—that is, the declarations, facts, and circumstances must amount to something more than consistency with appellant's idea. We said, in *Ashcraft v. Davenport Locomotive Works*, supra:

"Moreover, if the circumstances surrounding the case do no more than indicate a possibility of the accident, happening because of a defective appliance, or if they are no more consistent with the theory that the accident was due to some defect, but equally explainable on some other theory than the one charged, then plaintiff has not made out his case. The reason

for this is that the burden is upon the plaintiff, not only to show some defect for which the master was responsible, but also to show that this defect was the proximate cause of the injury."

Similar is the language used in *Dingmon v. Chicago & N. W. R. Co.*, supra:

"The appellee did not carry the burden resting upon him to establish his theory that the fire originated from the appellant's engine, under the circumstances proven, when it may fairly be said that the established circumstances are equally consistent with the theory that the fire originated from the appellee's stove. It is not enough for the appellee to produce evidence that creates a surmise or conjecture that the fire may have originated as claimed by him, while, at the same time, the proof also creates a surmise or conjecture that it may have originated in another way. Where the proof is equally balanced, or the facts are as consistent with one theory as with the other, a plaintiff has not met the burden which the law casts upon him."

Wherefore, no error appears under this assignment.

V. *Res ipsa loquitur* is asserted as an assistance to appellant's "proof."

Inapplicability of this philosophy at once is evident, because general "negligence" was not relied upon, but rather, specific allegations were enumerated. *Whitmore v. Herrick*, 205 Iowa 621. Had general "negligence" been set forth in one count, and the definite in another, the situation would be different. When, on the other hand, particular charges are relied on, they must be proven. *Kelly v. Muscatine, B. & S. R. Co.*, 195 Iowa 17. See, also, *Federal Elec. Co. v. Taylor*, 19 Fed. (2d Series) 122.

VI. Apparently the case was not tried on the "doctrine of *res ipsa loquitur*." So, due to the nature of the pleadings and theory of the trial below, appellant cannot now mend his hold, and submit the cause here on a different premise. *Russell v. Chicago, M. & St. P. R. Co.*, 195 Iowa 993. Appropriate phraseology in that authority is:

314

"A party who has tried a case in the lower court on one theory may not mend his hold on appeal, and try it on another theory there * * * ."

Consequently, no error was committed by the trial court in this regard.

VII. Basis for complaint is sought to be grounded upon appellee's violation of a city ordinance, although the same was not offered in evidence or otherwise proven in the court below. That failure is a bar to appellant's relying thereon. Nothing in this respect was presented for the consideration of the trial court, and therefore there is nothing for this court to review.

VIII. Other contentions for reversal are stated in general and indefinite terms, some without brief points, and others without argument. Resultantly, it is impossible for us to determine them. *Reynolds v. Chehak*, 199 Iowa 561; *Minneapolis & St. L. R. Co. v. Pugh*, 201 Iowa 208; *Ryan Bros. v. Rate*, 203 Iowa 1253; *In re Estate of Butterbrodt*, 201 Iowa 871; *Monona County v. Gray*, 200 Iowa 1133; *In re Estate of Mott*, 200 Iowa 948; *Blakely v. Cabelka*, 203 Iowa 5.

After a careful search of the entire record, we fail to find any reversible error. The judgment of the district court is affirmed.—*Affirmed*.

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.

EVANS, J., not participating.