# IN THE SUPREME COURT OF IOWA

No. 06–0655

Filed November 21, 2008

**SHIRLEY A. SMITH,** as Executor of the Estate of DONALD E. SMITH and **SHIRLEY A. SMITH,** Individually,

Appellant,

vs.

**ALAN R. KOSLOW** and **IOWA HEART CENTER, P.C.,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, John D. Lloyd, Judge.

Appeal by plaintiff from judgment for defendants in a medical malpractice case. **DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT AFFIRMED.**

Timothy Semelroth of Riccolo & Semelroth, P.C., Cedar Rapids, for appellant.

Robert D. Houghton, Nancy J. Penner, and Jennifer E. Rinden of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellees.

**CADY**, **Justice**.

In this appeal, we must decide if a district court committed error by instructing a jury in a medical malpractice action that the mere fact of an injury does not mean the doctor was negligent. We conclude the district court did not commit error. We vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Donald Smith tragically died during surgery to repair an abdominal aortic aneurism and an iliac artery aneurism.[1] He was seventy-two years of age and was a successful businessman. He lived in Blakesburg and was survived by his wife and six children.

The surgery was performed by Dr. Alan R. Koslow, M.D., who was employed by the Iowa Heart Center, P.C., in Des Moines.[2] Dr. Koslow planned to utilize the stent graft procedure to repair the aneurisms. He began the operation on the iliac artery aneurism. The procedure required him to first perform angioplasty on the artery. He chose to perform the angioplasty by using the Dotter technique. This technique involved the insertion of sequential retinal dilators to widen the artery prior to inserting the stent at the location of the aneurism. The stent would then allow blood to flow through the area without putting pressure on the artery wall.

After Dr. Koslow inserted the dilators, he was unable to pass the stent graft through the artery. Within a short period of time, Dr. Koslow

---

[1]The aneurism was discovered after Smith began to experience pain in his lower abdomen. He sought medical attention after the pain intensified and began to keep him awake at night. Doctors performed a CT scan on Smith, which revealed the aortic aneurism. An aortic aneurism is a weakening of the wall of the artery. Left unrepaired, it can spontaneously rupture and cause certain death.

[2]In this opinion, the defendants will be collectively referred to as Koslow.

discovered Smith was suffering from internal bleeding. He tried in vain through a variety of means to locate and stop the bleeding. His efforts were unsuccessful, and Smith died on the operating room table after suffering a series of heart attacks.

Shirley Smith, his wife and the executor of his estate, brought an action against Dr. Koslow and the Iowa Heart Center for negligence. She primarily claimed Dr. Koslow breached the accepted standard of medical care by using dilators to widen the artery, instead of using balloon angioplasty. She claimed the dilators caused the artery to rupture. Dr. Koslow claimed one of the known risks of the stent graft procedure is that aneurisms can spontaneously rupture during surgery.

In the course of instructing the jury at trial on the claim of negligence, the district court, in addition to the instruction setting out the elements of recovery, included the following supplemental instruction:

> The mere fact that a party was injured does not mean that a party was negligent.

Smith objected to the instruction, claiming it unduly emphasized Dr. Koslow's defense. She also claimed the instruction was an incomplete statement of the law in the absence of the following language she requested to be added to the instruction:

> While the result alone is not, by itself, evidence of negligence, yet the same may nevertheless be considered, together with other facts and circumstances disclosed by the evidence in a given case in determining whether or not such result is attributable to negligence or want of skill.

The district court overruled the objection, and the jury returned a verdict in favor of Dr. Koslow and the Iowa Heart Center. The jury found Smith failed to prove Dr. Koslow was negligent.

On appeal, Smith seeks a new trial based on error in giving the instruction to the jury that the existence of an injury does not mean the doctor was negligent. The court of appeals concluded that the district court did not err in instructing the jury. We granted further review.

## II. Standard of Review.

"We review a claim that the court gave an instruction that was not supported by the evidence for correction of errors of law." *Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006) (citing *State v. Piper*, 663 N.W.2d 894, 914 (Iowa 2003)). We review the converse claim that the trial court should have given a requested instruction for abuse of discretion. *Id.* (citing *Anderson v. State*, 692 N.W.2d 360, 363 (Iowa 2005)).

## III. "Bad Result/Injury is Not Negligence" Instruction.

It is a fundamental tenet of tort law that the fact a plaintiff has suffered an injury, without more, does not mean the defendant was negligent. *Novak Heating & Air Conditioning v. Carrier Corp.*, 622 N.W.2d 495, 497 (Iowa 2001); *Brewster v. United States*, 542 N.W.2d 524, 528 (Iowa 1996). Instead, to recover for an injury, our law requires an injured person to establish the existence of a duty of care, breach of the duty of care, and that the breach was the cause of the injuries suffered. *Novak Heating*, 622 N.W.2d at 497.

While we have applied these universal propositions in the past to decide the propriety of a directed verdict in a negligence case, we have not previously addressed the propriety of submitting the specific disputed proposition to a jury in the form of an instruction. However, the uniform jury instructions authored by the special committee on uniform court instructions of the Iowa State Bar Association includes an instruction for general negligence cases that incorporates this general

proposition. It provides that the "mere fact of an accident or injury does not mean a party was negligent." *See* Iowa Uniform Jury Instruction 700.8. This model instruction is nearly identical to the instruction given by the district court in this case.

Smith claims the instruction served as a comment on the evidence by emphasizing Koslow's claim that the blood loss and death during the surgery was not the result of any negligence. At the same time, she asserts the instruction minimized the importance of such evidence in her efforts to establish her claim that Koslow was negligent.

While we have not specifically addressed the propriety of instructing a jury in a negligence case on the proposition of law at dispute in this case, we have on several occasions applied the rule to claims involving medical malpractice actions in deciding whether the underlying claim was submissible to a jury. Specifically, in *Johnson v. Van Werden*, 255 Iowa 1285, 1290, 125 N.W.2d 782, 784 (Iowa 1964), we said, quoting from *O'Grady v. Cadwallader*, 183 Iowa 178, 192, 166 N.W. 755, 759 (1918):

> "[I]t is the general holding of the courts that the bare fact that full recovery does not result, or that a surgical operation is not entirely successful, is not, in and of itself, evidence of negligence . . . ."

Other jurisdictions, however, have considered various forms of the proposition as a jury instruction in various types of medical malpractice actions, with differing results.[3] Some jurisdictions have approved

---

[3]At the outset, we recognize a distinction is made between medical malpractice cases involving the doctrine of *res ipsa loquitur* and standard medical malpractice cases. Some jurisdictions hold that such an instruction should not be given with a *res ipsa loquitur* instruction, while other jurisdictions conclude the two instructions may be given together. *See Carver v. El-Sabawi*, 107 P.3d 1283, 1285–86 (Nev. 2005) (citing cases taking each position). This is not a question we face, of course, because this case does not involve the *res ipsa loquitur* doctrine.

various versions of the "bad result/injury is not negligence" instruction, while others have disapproved of the instruction or discouraged the use of the instruction. Yet, most all courts agree the "bad result/injury is not negligence" instruction reflects "well nigh universally recognized principles of medical malpractice law." *Jones v. Porretta*, 405 N.W.2d 863, 869 (Mich. 1987); *accord Watson v. Hockett*, 727 P.2d 669, 673 (Wash. 1986); *see* W. Page Keeton et al., *Prosser and Keeton on Torts* § 32, at 186 n.33 (5th ed. 1984); *see also Armsbruster v. Gray*, 225 Iowa 1226, 1230, 282 N.W. 342, 344 (1938) (" 'It is universally agreed that no inference of negligence arises from the mere fact that a collision occurred.' " (quoting *Harvey v. Borg*, 218 Iowa 1228, 1232, 257 N.W. 190, 193 (1934))).

Moreover, courts that disapprove of the instruction do so mainly due to the particular variation of the general proposition, not because of a disagreement with the general proposition itself. For example, the court in *Kennelly v. Burgess*, 654 A.2d 1335, 1340–41 (Md. 1995), found a "bad result" instruction was improper in a medical malpractice case because it told the jury that an unsuccessful result following medical treatment was "not *evidence of* negligence." (Emphasis added.) The court found the instruction went beyond the general proposition that an unsuccessful result was not itself negligence and improperly "implied that the jury should give no consideration at all to the unsuccessful medical treatment of [the plaintiff]." *Kennelly*, 654 A.2d at 1341.

On the other hand, even those jurisdictions that approve the "bad result/injury is not negligence" instruction find it tends to state an obvious proposition and is best reserved for those medical malpractice cases in which the jury might improperly use a bad medical result to find negligence. *See Porretta*, 405 N.W.2d at 870 ("We agree with the plaintiff

that there are times when the giving of such an instruction may mislead the jury by focusing the jury's attention on an irrelevant issue unsupported by the defendant's theory of the case or the evidence submitted."). On the other hand, in *Watson*, the court said:

> Such an instruction is particularly appropriate where the jury has heard evidence or argument from which it might reach an improper conclusion that doctors guarantee good results or can be found negligent merely because of a bad result.

727 P.2d at 673.

We agree with the majority of courts that the submission of the "bad result/injury is not negligence" instruction to a jury in a standard medical malpractice action would not normally constitute prejudicial error. It reflects a correct statement of the law. We recognize, however, the instruction could constitute reversible error in a particular case if it would unduly emphasize a particular theory or otherwise distract the jury in performing its responsibilities to decide the issues in the case.

In this case, we conclude the district court did not err by giving the supplemental instruction. Although the instruction was essentially embodied in the instruction on the elements for recovery of negligence, it was appropriate in this case to separately advise the jury that the injury, alone, did not mean Koslow was negligent. The closing argument presented by counsel for Smith supported the instruction in this case. In his argument, counsel for Smith repeatedly told the jury the bad result of the surgery was either caused by a spontaneous rupture of the artery or the care administered by the doctor.[4] Consequently, the choice

---

[4]Plaintiff's counsel argued:

> The cause of this injury occurred in one of two ways. It was either a spontaneous rupture of this vessel, or it was caused by the doctor. Those are your two choices in this case.

invited the jury to infer liability from the bad result in the event it concluded the artery did not spontaneously rupture. The instruction properly informed the jury that its verdict could not be decided in such a manner. Courts generally give jury findings considerable weight, and a supplemental instruction that properly assists the jury in the correct application of the law to the facts is not error.

Finally, Smith claims the instruction was erroneous because it was an incomplete statement of the law. If a jury is given the "bad result/injury is not negligence" instruction, she asserts the jury must also be told that it may still consider the bad result in assessing whether negligence occurred. Smith primarily relies on *Daiker v. Martin*, 250 Iowa 75, 91 N.W.2d 747 (1958), in which we said:

> "[W]hile the result alone is not, in itself, evidence of negligence, yet same may nevertheless be considered, together with other facts and circumstances disclosed by the evidence in a given case in determining whether or not such result is attributable to negligence or want of skill."

*Daiker*, 250 Iowa at 81, 91 N.W.2d at 750 (quoting *Kirchner v. Dorsey & Dorsey*, 226 Iowa 283, 294–95, 284 N.W. 171, 178 (1939)).

It is important to recognize that *Daiker* involved the placement of a cast by a doctor on the leg of the plaintiff that was too tight, resulting in the amputation of the limb. 250 Iowa at 76, 91 N.W.2d at 747. The question presented was whether the medical malpractice claim could proceed to trial without expert testimony, and we held the question of negligence by the doctor under such circumstances was one of common

---

On rebuttal, plaintiff's counsel again argued:

> The choice ultimately is, was this a spontaneous rupture or was it caused by the doctor? Those are the two choices, when you ultimately get down to it. Did lightening happen to strike at the moment that Dr. Koslow was doing his procedure? In order to find for Dr. Koslow in this case, you're going to have to find that.

knowledge that did not require expert testimony. *Id.* at 83–84, 91 N.W.2d at 752. Thus, our statement in the case, that the injury may nevertheless be considered by the jury as evidence of negligence, applied to a finding of negligence that did not require expert testimony.

We agree with Smith that the "bad result/injury is not negligence" instruction "does not mean that a bad result cannot be presented by plaintiffs as part of their evidence of negligence, but, rather, that, standing alone, it is not adequate to create an issue for the jury." *Porretta*, 405 N.W.2d at 874. Instead, "[s]omething more is required, be it the common knowledge that the injury does not ordinarily occur without negligence or expert testimony to that effect." *Id.* However, when expert testimony is required in a medical malpractice case, the expert, not the jury, is permitted to use the unsuccessful result in formulating the expert opinion that negligence occurred. *See Meda v. Brown*, 569 A.2d 202, 207 (Md. 1990) (holding an expert, as distinguished from a lay witness, may properly rely on an unsuccessful result in concluding a doctor is negligent). In *Kennelly*, the court properly summarized the applicable rule:

> If any form of a "mere happening" instruction is to be given in a medical malpractice case requiring expert testimony, the jury should be informed that, although an unsuccessful result does not create a presumption of negligence, it still may be considered as some evidence of negligence and that an expert witness may consider it in formulating his or her opinion that there was negligence.

654 A.2d at 1341.

In this case, Smith did not seek an additional instruction that would have informed the jury that a bad result could be considered by an expert witness in formulating his or her opinion. Instead, she sought an instruction that would permit the *jury* to do so in a case that required

expert testimony. Under Iowa law, a court must give a requested instruction when it states a correct rule of law applicable to the facts of the case and is not embodied in other instructions. *Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000). Under the circumstances of this case, the district court did not abuse its discretion in refusing to give the requested instruction because the instruction was not applicable to the facts of this case.

**IV. Conclusion.**

We conclude the trial court did not err or abuse its discretion in instructing the jury. We vacate the court of appeals decision and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Hecht and Wiggins, JJ., who dissent, and Appel and Baker, JJ., who take no part.

**HECHT, Justice (dissenting).**

I respectfully dissent. "Stuff happens" is a cute phrase on a bumper sticker, but it should not be included in jury instructions. I would hold the district court committed reversible error in giving the "mere fact of injury" instruction. My analysis begins with the observation that the instruction was entirely unnecessary. The jury was told through other instructions everything they needed to know about the definition of negligence. There simply was no need to remind the jury that the fact Mr. Smith died did not mean Dr. Koslow was negligent in performing the procedure.

That the instruction was unnecessary is not, however, its principal defect. The court's instructions on the law should not give undue prominence to any part of the case. *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989). In particular, the instructions should not "overemphasize one party's theory of the case." *Sunrise Dev. Co. v. Iowa Dep't of Transp.*, 511 N.W.2d 641, 644 (Iowa Ct. App. 1993). The "mere fact of injury" instruction violated these cardinal principles by gratuitously affirming a central premise of Dr. Koslow's theory of defense: Bad things occasionally happen during emergent medical treatments despite a physician's compliance with the relevant standard of care.

The worst feature of the challenged instruction was its capacity to communicate to the jury the notion the court doubted the treatment provided by Dr. Koslow fell below the relevant standard of care. I believe a reasonable juror could interpret the "mere fact of injury" instruction in this untoward way because the definition of negligence as conduct falling below the standard of care had already been given in other instructions. Why, a reasonable juror could wonder, would the court feel the need to

augment that definition?  Why, a reasonable juror could inquire, after properly defining the concept of negligence, would the court give a separate instruction emphasizing the essence of one of Dr. Koslow's principal arguments—that bad outcomes can occur in the absence of negligence—unless the court has doubts about the merits of the plaintiffs' claim?  Although the "mere fact of injury" instruction communicated an accurate statement of law, it was in my view completely unnecessary and prejudicial.

I believe the challenged instruction was also inappropriate because it could be understood by a reasonable juror as a backhanded comment on the evidence.  *See Peters v. Vander Kooi*, 494 N.W.2d 708, 712 (Iowa 1993) (instructions by the court that comment "on potential factual scenarios in which a standard of care may or may not have been adhered to" are impermissible comments on the evidence).  It commented on the evidence by reminding the jurors they could find the plaintiffs produced no evidence other than the fact of injury to support their claim.  Such a suggestion in the court's jury instructions was in my view inappropriate just as it would have been improper to remind jurors in the instructions that frivolous negligence cases are not submitted to the jury.

The majority suggests the instruction was appropriate given the substance of Smith's counsel's closing argument.  Counsel's argument suggested the jury must decide whether Mr. Smith's aneurysm burst during the procedure either coincidentally or as a consequence of the doctor's treatment.  The majority interprets this argument as an assertion the bad outcome of the procedure should be viewed by the jury as conclusive evidence of negligence.  In my view, counsel's argument can be understood as a more nuanced attempt to persuade the jury that the outcome was not coincidental, and was a consequence of the

technique used by Dr. Koslow which precipitated a tear in the surface of the aneurysm. The question of whether the doctor's choice and execution of the technique fell below the standard of care was a separate and distinct question for the jury to decide in conformity with appropriate instructions defining the plaintiff's burden to prove negligence and proximate cause. The argument made by Smith's counsel did not suggest otherwise, and it neither provoked nor justified the district court's deployment of the "mere fact of injury" instruction.

I would reverse and remand this case for a new trial.

Wiggins, J., joins this dissent.